UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TIMOTHY CYRUS,                                Case No. 1:11-cv-234

       Plaintiff,                                 Barrett, J.
                                                           Bowman, M.J.
   v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Timothy Cyrus filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents three claims of error.  The Commissioner has filed a response in opposition to Plaintiff's statement of errors, to which Plaintiff has filed no reply.[1]  As explained below, I conclude that the finding of non-disability should be REVERSED, because it is based upon clear legal error and is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

This judicial appeal concerns Plaintiff's second application for disability benefits. Plaintiff made an initial application for Disability Insurance Benefits (DIB) on May 4,

---

[1]Although Plaintiff commenced this action in April 2011, proceedings were delayed when the Commissioner inadvertently filed the wrong administrative record, and Plaintiff initially failed to file a timely statement of errors.  These errors were remedied by both parties, with Plaintiff filing his statement of errors on February 21, 2012.  Both parties were subsequently granted further extensions of time in which to brief the issues, with Plaintiff's last extension of time (to file a reply brief) having expired on July 2, 2012.

1

2004, alleging a disability onset date of June 8, 2003 based upon physical impairments that included severe hypertension, diabetes, and vision problems, as well as several physical conditions determined to be non-severe. (Tr. 60). When Plaintiff's initial application and request for reconsideration were denied, he requested a hearing *de novo* before an administrative law judge ("ALJ"). After an evidentiary hearing held on April 13, 2006, ALJ Gilbert A. Sheard denied Plaintiff's application in a written decision dated June 22, 2006.[2] (Tr. 59-63). ALJ Sheard specifically found that Plaintiff retained the residual functional capacity ("RFC") for a "full range of [sedentary] work" except that:

> [t]he job must be either alternate sit/stand at will, or must have the opportunity to stand and stretch briefly frequently, or must have a significant amount of the work done standing up. Keep him away from unprotected heights, dangerous moving machinery, automotive equipment, ladders, open water, and open flame. He can lift 16 pounds occasionally, and can stand one hour and sit eight hours per workday. He has some trouble with depth perception with his eyes, all as set out in Exhibit 13E

(Tr. 61-62). There is no record of further appeal of ALJ Sheard's decision.

Instead, in April 2008, Plaintiff filed new applications for both Disability Insurance Benefits (DIB) and for Supplemental Security Income (SSI), alleging the same disability onset date of June 8, 2003, and roughly the same physical impairments, including severe hypertension and diabetes. (Tr. 41). This time, however, his applications included a new impairment of stroke. After Plaintiff's claims were again denied initially and upon reconsideration, he again requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). On January 6, 2010, ALJ Geraldine H. Page held a hearing at which Plaintiff was represented by counsel. (Tr. 8-28). At the hearing, ALJ

---

[2] The copy of the decision in the administrative record is undated and unsigned, but Defendant represents that the decision was dated in "June 2006," (Doc. 21 at 4), and no one has challenged its authenticity.

2

Page heard testimony from Plaintiff and from a vocational expert.  On February 17, 2010, ALJ Page denied Plaintiff's applications for benefits in a written decision.  (Tr. 38-52).  The Appeals Council denied Plaintiff's request for further review.  Therefore, the ALJ's decision stands as the Defendant's final determination.  It is from this more recent decision that Plaintiff now appeals to this Court.

Plaintiff is a high school graduate, and was 39 years old on his alleged disability onset date.  (Tr. 51).  In her "Findings," which represent the rationale of the decision, the ALJ determined that the claimant has not engaged in substantial gainful activity since June 8, 2003, his alleged onset date, and that he has the following severe impairments: "hypertension, diabetes mellitus, obesity, and history of cerebrovascular accident."  (Tr. 43).  After determining that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1," the ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform a range of light work, with the following restrictions:

> The claimant would be capable of standing/walking for 6 hours in a normal 8 hour work day; sitting for 6 hours in a normal 8 hour work day; occasional climbing of ramps or stairs, balancing, kneeling, crawling, stooping, or crouching.  The claimant would require work that allows the worker to alternate between sitting and standing; did not require exposure to hazardous machinery, unprotected heights, climbing ladders, ropes, or scaffolds, or vibrating surfaces; and does not expose the worked [sic] to loud background noise.

(Tr. 44).  Based upon these restrictions, the ALJ determined that Plaintiff was unable to perform his past relevant work as a construction laborer, installer, crane operator, or construction truck driver.  (Tr. 50). Nevertheless, the ALJ found that based upon Plaintiff's age, education, work experience, and residual functional capacity, "there are

3

jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 51).  Therefore, the ALJ concluded that Plaintiff was not under a disability and was not entitled to either DIB or SSI benefits.

In his appeal to this Court, Plaintiff argues that the ALJ erred: (1) by improperly relying upon the opinion of a non-examining state agency physician; (2) by violating the rule of *Drummond v. Commissioner*, 126 F.3d 837 (6th Cir. 1997); and (3) by improperly evaluating Plaintiff's credibility.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for DIB or SSI benefits, a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning,[3] a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a

---

[3] The definition of the term "disability" is essentially the same for both DIB and SSI.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

4

whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she

5

suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

In this case, Plaintiff alleges that the three previously referenced errors at the fifth step of the sequential analysis require remand back to the Commissioner. Upon review, it is clear that the ALJ erred as a matter of law in failing to follow *Drummond*, and in overly relying upon a non-examining physician in determining Plaintiff's RFC. Those errors require this Court to remand for further proceedings.

### B. Plaintiff's Claims of Error

#### 1. *Drummond* Error

In response to Plaintiff's first application for benefits, the ALJ determined that Plaintiff was limited to sedentary work, with additional postural and other limitations specified in the RFC finding. (Tr. 59-63). In *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997), the Sixth Circuit held that "[a]bsent evidence of an *improvement* in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." (Emphasis added). In this case, ALJ Page did not reference the prior RFC found by ALJ Sheard in 2006. Plaintiff argues that ALJ Page erred by failing to reference Plaintiff's stroke, frequent headaches, uncontrolled diabetes, low potassium and uncontrolled hypertension and blurry vision, or how those conditions have actually "improved" since 2006, such that ALJ Page was not bound by the prior RFC determination.

As Defendant now concedes, ALJ Page clearly erred by failing to reference the prior determination that Plaintiff is limited to a restricted range of sedentary work. Stuck with the legal error, Defendant argues instead that the error was harmless because

6

"ALJ Page's RFC finding was substantial [sic] similar or more restrictive than the 2006 RFC determination." (Doc. 21 at 4). Finding the error was not harmless, I recommend remand for further review.

In determining Plaintiff's RFC, ALJ Page wholly adopted the RFC found by Dr. Rebecca Neiger, a non-examining consultant. In her review of Plaintiff's medical records in August 2008, Dr. Neiger briefly noted the existence of the 2006 ALJ decision denying Plaintiff's prior claim, and that a prior records review conducted by an "out-of-state reviewing physician" -who also completed an RFC form - "did not address the ALJ [opinion] in file." (Tr. 332, referencing RFC at Tr. 296-303). On August 4, 2008, Dr. Neiger stated that she would not adopt the 2006 RFC determination "because of new and material change (stroke)" - namely, that Plaintiff had suffered a mild stroke on February 29, 2008. (Tr. 232; *see also* Tr. 235, 241-43, 252-254). Dr. Neiger opined that, in light of the evidence of a stroke in 2008, the agency should obtain either three months of treatment notes following the stroke, "or a current CE [consulting examination] to make sure he has no lingering deficits and/or new stroke-related issues." (Tr. 332).

Nine days later on August 13, 2008, Dr. Neiger completed a new RFC form, which was subsequently adopted by ALJ Page. No consulting examination was ever completed, but the RFC form reflects that Dr. Neiger reviewed 3 months' worth of follow-up treatment records post-dating Plaintiff's stroke. Defendant argues that because those records after his stroke showed "minimal" abnormalities and no "residual

deficits," (Tr. 255, 282-283, 332, 372-373), it was permissible for ALJ Page to adopt Dr. Neiger's RFC opinions,[4] without reference to the prior, more restrictive RFC findings.

Several problems exist with the Defendant's "harmless error" analysis. First, evidence that the claimant has suffered a stroke, no matter how minor, cannot be considered evidence of "medical improvement" as is specifically required by *Drummond*. Defendant offers no other evidence of "medical improvement," nor is such evidence likely to exist, given that even Dr. Neiger first suggested that a consulting examination might be required to assess the additional impact of Plaintiff's stroke.

Second, this Court cannot agree that ALJ Page's RFC finding was "substantially similar" to the prior RFC determined by ALJ Sheard. ALJ Sheard restricted Plaintiff to a partial range of sedentary work, including lifting not more than 16 pounds, whereas ALJ Page found Plaintiff capable of a range of light work, lifting and carrying up to 20 pounds occasionally and 10 pounds frequently. (Tr. 334-336). ALJ Sheard held that Plaintiff must be able to "sit or stand at will" or alternatively, to be able to "stand and stretch briefly frequently." (Tr. 61-62). ALJ Sheard also limited Plaintiff to standing no more than one hour per day. (*Id*.). Although ALJ Page included a restriction that Plaintiff be permitted to alternate sitting and standing, she did not require that alteration be permitted "at will." More importantly, instead of limiting Plaintiff to just one hour of standing per day, she expressly found Plaintiff "capable of standing/walking for 6 hours in a normal 8 hour work day." These differences alone suggest that ALJ Page's RFC

---

[4] A second reviewing consultant, Dr. Willa Caldwell, concurred in Dr. Neiger's assessment without further comment. (Tr. 374).

8

findings would have permitted a much greater range of work than the RFC determination previously made by ALJ Sheard.

Defendant argues that, despite an RFC finding by ALJ Page that Plaintiff could perform "light" work, the vocational expert testified at the 2010 hearing that due to the sit/stand option, Plaintiff would be restricted to sedentary jobs, which by definition requires lifting no more than 10 pounds at a time. (Tr. 24-25, 51). All of the jobs suggested by the VE were at the sedentary level. Based on that testimony, Defendant argues that ALJ Page's RFC finding - at least as applied in this case through the VE's testimony- was more restrictive than that found by ALJ Sheard. However, based on the hypothetical provided by the ALJ, some ambiguity remains as to Plaintiff's lifting capacity. Similarly, the "sedentary" jobs could at least theoretically require greater standing/walking than permitted by the 2006 RFC determination. Relevant regulations specify that "[j]obs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §404.1567(a); 20 C.F.R. §416.967(a). The word "occasionally" can mean up to one third of the time, or about two hours of an eight-hour work day. *See* Social Security Ruling (SSR) 96-9p, 1996 WL 374185. That amount of walking and standing would exceed the time limits proscribed by the prior ALJ's opinion. Based upon clear legal error under *Drummond*, and ambiguity as to whether the error could be considered harmless, I conclude that the error requires remand for further evaluation.

### 2. Adoption of Non-examining Consultant over Treating Physician's Opinion in Formulating RFC

The conclusion that remand is required in this case is bolstered by Plaintiff's second claim of error: the adoption of Dr. Neiger's RFC opinion over the contrary opinions of Plaintiff's long-term treating physician, Dr. Suzanne Bonzo. The Social Security regulation pertinent to evaluation of a treating physician's opinion states: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(c)(2). In determining the weight to give to any medical source opinion, an ALJ must also consider: 1) the examining relationship between the medical source and claimant; 2) the treatment relationship, including the length of treatment, frequency of examination, and nature and extent of relationship; 3) support by medical evidence; 4) consistency of the opinion with the record as a whole; 5) the source's area of specialization; and 6) any other factors which support or contradict the opinion. *Id.*

Ultimately the determination of a claimant's residual functional capacity is "reserved to the Commissioner." 20 C.F.R. §404.1527(e)(2). There is no doubt that where conclusions regarding a claimant's functional capacity are not substantiated by objective evidence, the ALJ is not required to credit those conclusions. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994). Similarly, although "[g]enerally the opinions of treating physicians are given substantial, if not controlling, deference," they are only given such deference when the opinions are

supported by objective medical evidence.  *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).  Thus, "if the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for his rejection."  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *see also* 20 C.F.R. § 1527(d)(2).

In this case, the agency elected not to proceed with any type of consultative examination, instead relying upon a records review by a non-examining consultant, Dr. Neiger, and the concurrence with her opinion expressed by a second non-examining consultant, Dr. Willa Caldwell.  (Tr. 374).  As stated, ALJ Page adopted wholesale the RFC opinions of Dr. Neiger, while rejecting the much more restrictive RFC opinions of Dr. Bonzo.

An ALJ's decision to accord greater weight to state agency physicians over a plaintiff's treating physicians is not, by itself, reversible error, because there may well be appropriate reasons for that decision.  *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 409 (6th Cir. 2009).  For example, if the consulting physician's opinion is based upon more complete information than was available to the physician's treating source, then the ALJ may give greater weight to that opinion.  *Id.* (citing Soc. Sec. Rul 96-6p, 1996 WL 374180, at *3 (July 2, 1996)).

On the record presented, however, the ALJ's adoption of an RFC based exclusively upon the report of Dr. Neiger is problematic.  As noted, Dr. Neiger initially recommended a consultative examination on August 4, 2008 based upon Plaintiff's February 2008 stroke and a record dating from March 2008 that suggested continuing "TIA symptoms."  (Tr. 332).  Although Dr. Neiger determined a week later that a

11

consultative examination was unnecessary, based upon her review of post-stroke records, her August 13, 2008 RFC opinions were expressed without the benefit of Plaintiff's most recent medical records from 2009 and 2010, (*see generally* Tr. 375-416), and without benefit of the opinions of Plaintiff's long-term treating physician, Dr. Bonzo. On December 14, 2009, Dr. Bonzo completed an RFC form and opined that Plaintiff had extremely severe physical limitations resulting from his severe hypertension. For example, Dr. Bonzo stated that Plaintiff should not (even occasionally) lift more than 5 pounds, that he could stand and walk for not more than 1 hour, or 1/2 hour without interruption, and that he could sit for not more than 5 hours. (Tr. 408-410; Tr. 48).

In adopting the RFC determined by Dr. Neiger, the ALJ misstated the record when she wrote: "The record does not contain *any* opinions from treating or examining physicians that Claimant has limitations greater than those determined in this decision." (Tr. 49, emphasis added). Clearly, Dr. Bonzo's opinions included limitations far more restrictive than those determined by Dr. Neiger and ALJ Page.

In fact, within a page of her misstatement concerning the absence of opinions from treating physicians, ALJ Page refers to records from Dr. Bonzo dating from 2006 through 2010, thereby recognizing Dr. Bonzo as a treating physician whose opinions ordinarily would be entitled to "controlling" weight over the opinions of the non-examining consultants. However, ALJ Page specifically rejects Dr. Bonzo's RFC opinions, based upon internal "inconsistencies" within Dr. Bonzo's report and the ALJ's belief that the limitations suggested by Dr. Bonzo were inconsistent "with what one would expect" based upon Dr. Bonzo's relatively conservative course of treatment. (Tr. 48).

In *Blakley*, the Sixth Circuit remanded where the non-reviewing consultant had failed to review the most recent medical records, and the ALJ failed to indicate that he had "at least considered [that] fact before giving greater weight" to the consulting physician's opinions. *Blakley*, 581 F.3d at 409 (*quoting Fisk v. Astrue*, 253 Fed.Appx. 580, 585 (6th Cir. 2007)). Under *Blakley*, then, an ALJ may choose to credit the opinion of even a non-examining consultant who has failed to review a complete record, but he should articulate his reasons for doing so. If he fails to provide sufficient reasons, his opinion still may be affirmed if substantial evidence supports the opinion and any error is deemed to be harmless or *de minimis*.

In this case, Dr. Neiger did not have access to either Dr. Bonzo's RFC opinions or Plaintiff's relevant 2009 and 2010 records. While *Blakley* does not forbid adoption of Dr. Neiger's opinions in these circumstances, it does require the exercise of caution and greater explanatory analysis. Here as in *Blakley*, the ALJ did not acknowledge the incomplete records review by Dr. Neiger, including the fact that Dr. Neiger was unable to review the contrary opinions of Plaintiff's treating physician. The ALJ also did not articulate most of the relevant factors (i.e., the length of relationship or frequency of examination, etc.) before dismissing Dr. Bonzo's opinions. On the other hand, the ALJ did appropriately note two internal inconsistencies in Dr. Bonzo's RFC report as a basis for rejecting Dr. Bonzo's opinion. However, considering both the prior *Drummond* error and the dictates of *Blakley*, I conclude it was error for the ALJ to adopt the opinions of the non-examining consultant over the opinions of Plaintiff's long-time treating physician without additional analysis and explanation.

### 3. Credibility Analysis

In a third claim, Plaintiff additionally challenges the ALJ's evaluation of his credibility, but I find no error in this respect. An ALJ's assessment of credibility must be supported by substantial evidence, but is generally entitled to great deference. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

As one of several factors negatively impacting her assessment of Plaintiff's credibility, the ALJ referenced evidence that Plaintiff "admitted to not taking prescribed medications as directed and not seeking assistance when he ran out of his medications." (Tr. 49). Plaintiff argues that because the record reflects that Plaintiff was unemployed and without health care insurance, remand is required "to inquire into the availability of insurance...and the Claimant's ability to pay for treatment or to obtain free samples...before allowing the adverse credibility finding...to stand." (Doc. 17 at 6). However, Plaintiff's argument ignores records that reflect that Plaintiff was offered free samples and counseled on methods of obtaining low-cost or free medications. (*See e.g.* Tr. 225, declining recommended treatment to remain in hospital for blood pressure management; Tr. 305-306, 362-363, hospital records noting that Plaintiff ran out of medications, but "did not call anyone to get samples or did not contact his family for financial help," with additional notes re counseling Plaintiff "about ways of getting medications and gave him patient assistance forms for some drug companies...."; Tr. 308, 364, additional hospital records re Plaintiff failing to ask for samples; Tr. 312, notation that samples provided).

In addition, the ALJ pointed out several other facts that negatively reflected upon Plaintiff's credibility, such as inconsistencies concerning the reason for leaving his last

14

employment and other inconsistencies in his testimony concerning his daily activities and physical abilities. (Tr. 49). Most of those additional reasons for discounting Plaintiff's credibility are not challenged by Plaintiff in this appeal. In a fleeting challenge to the ALJ's reference to daily activities, Plaintiff notes that intermittently performed daily activities cannot be used as evidence that he can perform substantial gainful activity. While a correct statement of the law, there is no evidence in the record that Plaintiff endures such substantial pain that his activities are severely limited and/or intermittently performed. In addition, it is generally appropriate for an ALJ to consider Plaintiff's activity level and inconsistencies in evaluating Plaintiff's credibility. *See e.g., Warner v. Comm'r of Soc. Sec.*, 375 F.3d at 392 ("The administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain."); *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 536 (6th Cir. 2001)(ALJ may consider claimant's testimony of limitations in light of other evidence of claimant's ability to perform tasks such as walking, going to church, going on vacation, cooking, vacuuming and making beds).

### 4. Decision Not to Order Consulting Examination

Although not set forth as a separate claim of error by Plaintiff, Defendant addresses the issue of the ALJ's failure to order a consultative examination. Social Security proceedings are inquisitorial rather than adversarial," such that an ALJ has a duty "to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111 (2000)(citation omitted). Whether or not to order a consultative examination is a discretionary decision made by an ALJ upon a

finding that the record is not sufficiently developed to evaluate a claim. *See Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001).

As Defendant notes, in this case Plaintiff made no formal request to expand the record through a consultative examination at any point during the administrative proceedings, including at the evidentiary hearing when he was represented by counsel. For that reason, the Court agrees that Plaintiff appears to have waived this issue for purposes of this appeal. The Sixth Circuit has made clear that "[t]he duty to develop the record...is balanced with the fact that '[t]he burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant.'" *Landsaw v. Sec'y of Health & Human Servs.*, 803 F2d 211, 213 (6th Cir. 1986)(citing 20 C.F.R. §§416.912, 416.913(d)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)(claimant's burden to prove disability); *Wright-Hines v. Comm'r of Soc. Sec.,* 597 F.3d 392 (6th Cir. 2010)(claimant and her counsel bear the burden of introducing record evidence to support a finding that benefits should be awarded).

In any event, the record does not appear to have been so seriously underdeveloped in this case at the time of the last evidentiary hearing that it was an abuse of discretion for the ALJ to fail to order a consultative examination at taxpayer expense. Of course, the fact that it was not reversible error for the ALJ to fail to order a consultative exam at the last evidentiary hearing does not mean that the ALJ would be precluded from making a different decision on remand. Such a decision remains within the discretion of the ALJ.

### III. Conclusion and Recommendation

For the reasons stated herein, **IT IS RECOMMENDED THAT:**

1. The decision of the Commissioner to deny Plaintiff DIB and SSI benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g);

2. On remand, the ALJ be instructed to: (1) remedy the errors identified in this Report and Recommendation concerning the weight to be given to the opinions of Plaintiff's treating physician, as well as the weight given to the opinions of non-examining consulting physicians; and (2) remedy the *Drummond* error;

3. As no further matters remain pending for the Court's review, this case be **CLOSED.**

                                                  /s Stephanie K. Bowman
                                                  Stephanie K. Bowman
                                                  United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TIMOTHY CYRUS,             Case No. 1:11-cv-234

    Plaintiff,             Barrett, J.
                              Bowman, M.J.
  v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).